UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SZAMANTHA LOTHROP,<br><br>        Plaintiff,<br><br>    v.<br><br>WESTERN TRAILS CHARTERS &<br>TOURS, et al.,<br><br>        Defendants. | Case No. 24-cv-07964-AMO<br><br>**ORDER DENYING MOTION TO<br>DISMISS**<br><br>Re: Dkt. No. 26 |

This action arises out of a bus accident that occurred in Tremonton, Utah on December 12, 2022. Defendants Western Trails Charters & Tours, doing business as Salt Lake Express, and Robert Todd Boggs move to dismiss this action on the grounds of forum non-conveniens. ECF 26. Plaintiff Szamantha Lothrop opposes. ECF 31. Defendants have elected to forgo a reply, which was due June 6, 2025. *See* ECF 26; Civil L.R. 7-3(c). Now that briefing is closed, the Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b) and **DENIES** the motion for the reasons set forth below.

To the extent Defendants seek dismissal on the basis of forum non-conveniens, their motion is **DENIED**. "Dismissal under *forum non conveniens* requires that an alternative forum be available in [a] foreign country." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 809 (N.D. Cal. 2004) (citation omitted); *see* Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 4-L ¶ 4:835 (2025) ("Forum non conveniens remains viable in federal courts where the proposed alternative forum is a foreign country. But where it is a different federal district, forum non conveniens has been replaced by 28 USC § 1404(a), which allows transfer from one district to another[.]").

To the extent Defendants' motion can be construed as seeking transfer of the case to the

United States District Court
Northern District of California

1   United States District Court for the District of Utah under 28 U.S.C. § 1404(a), their motion is

2   **DENIED** for failure to justify transfer under the relevant factors.  Transfer pursuant to Section

3   1404(a) lies within the discretion of the district court and depends on the facts of each particular

4   case.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  The Court must first

5   determine whether the case could have been brought in the district where transfer is sought before

6   assessing the convenience of parties and witnesses and the interest of justice.  *See State of Cal. v.*

7   *Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1059 (N.D. Cal. 2018).  In deciding whether

8   transfer is warranted, the Court may consider several factors, including: "(1) the location where

9   the relevant agreements were negotiated and executed, (2) the state that is most familiar with the

10  governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the

11  forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the

12  differences in the costs of litigation in the two forums, (7) the availability of compulsory process

13  to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of

14  proof."  *Jones*, 211 F.3d at 498-99 (footnote omitted).  "[T]he presence of a forum selection clause

15  is [also] a 'significant factor' in the court's § 1404(a) analysis," and "the relevant public policy of

16  the forum state, if any, is at least as significant a factor in the § 1404(a) balancing."  *Id.* (footnotes

17  omitted).

18      "The burden is on the party seeking transfer to show that when these factors are applied,

19  the balance of convenience clearly favors transfer."  *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d

20  772, 776 (N.D. Cal. 2014) (citation omitted).  "The defendant must make a strong showing of

21  inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v.*

22  *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  "It is not enough for the defendant

23  to merely show that it prefers another forum, and transfer will also not be allowed if the result is

24  merely to shift the inconvenience from one party to another."  *Lax*, 65 F. Supp. 3d at 776 (citation

25  omitted).

26      There being no argument from Lothrop that this action could not have been filed in the

27  District of Utah, *see generally* Opp., the Court turns to the relevant factors, beginning with those

28  that weigh against transferring the case.  The first factor – the location where the relevant

agreements were negotiated and executed – favors Lothrop. Lothrop declares that she "purchased a bus ticket online while located in and residing in Alameda County, California, with a scheduled departure from Oakland, California, and a destination of Cheyenne, Wyoming. The incident giving rise to this action occurred during this trip." ECF 33 ("Lothrop Decl.") ¶ 4. The fact that the initial transaction with Defendants took place in California and that Lothrop's purchased transit originated in the state weighs against transfer. *See Jones*, 211 F.3d at 499 (factors " 'clearly demonstrated that California was [the] more appropriate" forum where the agreements giving rise to the plaintiff's claims were negotiated and executed in California).

The third factor – the plaintiff's choice of forum – also favors Lothrop. She declares that she was born in Vallejo, California, has resided in California "continuously for [her] entire life[,]" and intended to return to California after her trip to Wyoming. *Id.* ¶¶ 2-5. She was therefore a California resident at the time she purchased her bus ticket and at the time of the accident. In addition, California has a strong public policy in protecting consumers and regulating common carriers doing business in the state.[1] *See, e.g.*, Cal. Bus. & Profs. Code §§ 17550(a)(4) ("The public welfare requires regulation of sellers of travel in order to eliminate unfair advertising, sales, and business practices, to establish standards that will safeguard the people against financial hardship, to encourage competition, fair dealing, and prosperity in the travel business, and to provide certain and reliable funding for the seller of travel registration program and enforcement by the office of the Attorney General of this article."). In light of this, Lothrop's choice of forum is entitled to substantial deference. *See Jones*, 211 F.3d at 499 (the plaintiff's choice of forum – California – was "supported by [the state's] strong public policy to provide a protective local forum for local franchisees.").

The fourth factor – the respective parties' contacts with the forum – and the fifth factor – the contacts relating to the plaintiff's cause of action in the chosen forum – also favor Lothrop. Lothrop purchased her bus ticket while in California, Lothrop Decl. ¶ 4, the trip originated in the

---

[1] Defendants assert that both California and Utah "are equally interested in seeing their citizens get compensation for the torts committed against them." Mot. at 10. When it comes to Lothrop, who is California resident, the Court finds that California has the prevailing interest.

state, *id.* ¶ 6, and while Defendants are non-California residents, they directed their activities to the forum to avail themselves of the benefits of doing business here.  In addition, Lothrop is being treated by physicians based in California for the "chronic, debilitating spinal pain" she experiences as a result of being "propelled through the front windshield of the bus" during the accident, and her Medi-Caid health coverage is administered by the California Department of Health Care Services. *Id.* ¶¶ 9-29.  These substantial contacts with California weigh in favor of permitting the case to proceed here, particularly in light of the fact that, on this record, Lothrop's contacts with Utah stem solely from the accident occasioned by Defendants' alleged negligence. *See Jones*, 211 F.3d at 499 (that the plaintiff's claims "arose out of the construction and initial operation of the store located in LaVerne, California[]" weighed in favor of keeping the case in the state).

The eighth factor – the ease of access to sources of proof – also favors Lothrop.  She is receiving care from physicians in California, Lothrop Decl. ¶¶ 8-24, and these will be critical witnesses with knowledge of the extent of Lothrop's injuries who cannot be compelled to testify at trial in Utah.  In addition, Lothrop's injuries make travel "physically burdensome" as it "exacerbates [her] symptoms." *Id.* ¶ 26.  She "cannot sit or remain in a static position for extended periods without significant discomfort." *Id.*  The location of Lothrop's current medical team and the travel limitations resulting from her injuries would significantly hamper Lothrop's ability to litigate elsewhere.  Though, as discussed below, Defendants' ability to litigate is also somewhat constrained if forced to litigate in California, the financial and medical circumstances unique to Lothrop tip this factor in her favor.

The sixth and seventh factors – the differences in the costs of litigation in the two forums and the availability of compulsory process to compel attendance of unwilling non-party witnesses – inconvenience both parties equally regardless of the forum in which this action proceeds.  With respect to the costs of litigation, Defendants have provided no specifics as to the expenses associated with litigation in California as opposed to Utah, *see generally* Mot., ECF 26-1 ("Walker Decl."), ECF 26-2 ("Strong Decl."), and they offer no basis on which this Court can find that those expenses should be allocated to Lothrop, whose declaration establishes that she is physically and financially unable to bear the inconvenience associated with litigating in a forum

1    she did not choose.

2            With respect to compelling attendance of unwilling non-party witnesses, Defendants

3    indicate that Lothrop received initial treatment in Utah for two weeks after the accident occurred,

4    and that accident investigations were conducted by local law enforcement.  *See* Strong Decl. ¶ 12.

5    These individuals, if unwilling to testify, could not be compelled to testify at trial in California.

6    *See* Fed. R. Civ. P. 45(c) ("A subpoena may command a person to attend a trial . . . (A) within 100

7    miles of where the person resides, is employed, or regularly transacts business in person; or (B)

8    within the state where the person resides, is employed, or regularly transacts business in person, if

9    the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not

10   incur substantial expense.").  But transferring the case to Utah would impose the same limitations

11   on Lothrop.  She would be unable to compel testimony not only of her physicians, but of her

12   "aunt, all of [her] former employers, close co-workers, friends, and other social and professional

13   connections[,]" who Lothrop describes as the "individuals . . . in the best position to have

14   observed [her] and interacted with [her] prior to the incident and, in some cases, following the

15   incident."  Lothrop Decl. ¶¶ 30-31.  Indeed, while Defendants note that keeping the case in

16   California means that they cannot compel non-party witnesses to testify in the case, they also

17   acknowledge that "[a]lternatively, Plaintiff cannot compel her witnesses to appear in Utah."  *Id.*

18   Accordingly, transfer would not be in the interest of justice as it would merely shift inconvenience

19   from Defendants to Lothrop.  *See Lax*, 65 F. Supp. 3d at 776.

20           The weight of the remaining factor – the state that is most familiar with the governing

21   law – does not compel transfer.  Defendants represent that "the law in the District of Utah provides

22   remedies that are identical or comparably similar to those available in California[,]" and that the

23   Utah District Court "is familiar [with] applying the *Federal Rules of Civil Procedure* . . . ."  Mot.

24   at 7, 10; Strong Decl. ¶¶ 9-11.  Defendants' proffer makes this factor neutral at best in the overall

25   balancing.

26           That Lothrop's is the sole case pending in California does not shift the overall balance of

27   factors in favor of Defendants.  They indicate that "nearly all the lawsuits against [them] have

28   been filed in Utah," that "[s]even (7) of the nine (9) active cases in the State of Utah have been

United States District Court
Northern District of California

5

consolidated in the First District Court of Utah[,]" and that three cases are pending in Texas, one of which was filed by three plaintiffs who moved there after previously living in Utah.  Mot. at 5; Strong Decl. ¶¶ 2-8.  While Defendants assert that "[a] separate trial of Plaintiff's claims in California from those nine (9) cases in Utah, against the same Defendants, for the same factual information that caused their alleged injuries and damages, could lead to fragmented litigation, inconsistent rulings, and findings[,]" transfer does not eliminate these risks.  They persist even if Lothrop's action is transferred from this district court to a federal court in Utah, in which no other action is pending.  The pendency of these other actions thus does not favor transfer.

   For the reasons set forth above, Defendants' motion is **DENIED**.

   **IT IS SO ORDERED.**

Dated: June 30, 2025

                                  _____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**